UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00146-TBR

HEARTLAND MATERIALS, INC., *et. al.*,                           PLAINTIFFS

v.

WARREN PAVING, INC, *et al.*,                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment. First, Plaintiffs

Heartland Materials, Inc., William R. Frazer, LLC, and Southern Aggregate Distributors, Inc.

filed a motion for summary judgment, [DN 30], to which Defendants Warren Paving, Inc. and

Slats Lucas, LLC responded, [DN 40], and Plaintiffs replied, [DN 42.] Defendants also moved to

file a sur-reply, [DN 44], to which Plaintiffs responded, [DN 45], and Defendants replied, [DN

48.] Second, Defendants filed their own motion for summary judgment, [DN 54.] Plaintiffs

responded in opposition, [DN 57], and Defendants replied, [DN 58.] Fully briefed, these matters

are now ripe for adjudication. For the reasons explained in detail below, Plaintiffs' motion for

summary judgment is **GRANTED IN PART AND DENIED IN PART**, Defendants' motion to

file a sur-reply is **GRANTED**,[1] and Defendants' motion for summary judgment is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of a contract entered into between Plaintiff Heartland Materials, Inc.

("Heartland") and Defendant Warren Paving, Inc. ("Warren Paving") in 2004. In 2003, Warren

Paving sought to purchase or develop a limestone quarry in Kentucky. [DN 1 at 3, ¶ 7

(Complaint).] Heartland, who was assisting Warren Paving in this endeavor, eventually

---

[1] Ultimately, Defendants' sur-reply did not affect the outcome in the case. Therefore, the Court's consideration of the sur-reply did not prejudice Plaintiffs. Accordingly, in the interests of justice, the Court is granting Defendants'' motion, [DN 44.]

identified the property at issue herein, ("the "Property"), which was owned by Dennis and Kathryn Grabowski and consisted of "approximately 339 acres of land on two contiguous tracts located in Livingston County, Kentucky." [*Id.* at 4, ¶ 12.] "After preliminary research indicated that the Property would be an adequate site to develop a limestone quarry if purchased at or near the Grabowskis' asking price, Warren Paving directed Heartland to negotiate the purchase of an option to buy the Property." [*Id.*] Warren Paving paid Heartland $5,000 to acquire a 60-day option to purchase the Property and, later, an additional $5,000 to extend the option for another 60 days. [*Id.* at 4–5; DN 40-1 at ¶¶ 5–6 (Lawrence Warren Declaration).]

According to Plaintiffs, Warren Paving requested that Heartland acquire the option in Heartland's name "in order to keep Warren Paving's corporate plans to develop a limestone quarry confidential" because "Warren Paving did not want its plans to purchase or develop a limestone quarry to become publicly known." [DN 1 at 4, ¶¶ 13, 10.] Plaintiffs contend that, once geological testing demonstrated that the Property would be an appropriate site for the development of a limestone quarry, Warren Paving decided to purchase the Property in its own name, "thereby requiring an assignment of the purchase option held by Heartland to Warren Paving." [*Id.* at 5, ¶ 17.] Plaintiffs assert that Heartland's lawyers drafted an "agreement providing for assignment of Heartland's option to purchase the Property to Warren Paving and payment of certain retained royalties by Warren Paving to Heartland," but that Warren Paving rejected the draft agreement and had its own lawyers "draft an entirely new agreement," which the parties ultimately executed. [*Id.*]

Warren Paving tells a different version of events, however. In his Declaration, Lawrence Warren, the majority owner of Warren Paving, stated that it was his "understanding that the option to acquire the [ ] Property was to be made in Warren Paving's name and not in the name

of Heartland." [DN 40-1 at ¶ 4.] According to Warren, he did not learn that the option had been purchased in Heartland's name until Warren Pacing was preparing to close on the Property. [*Id.* at ¶ 7.] Warren states in his Declaration that, at that time, he "was told by Heartland and its representatives that if Warren Paving would not agree to a $0.40 per ton [of limestone] royalty, then Heartland would not assign the purchase option to Warren Paving and would instead sell the option to another interested party." [*Id.* at ¶ 8.] Warren asserts that Heartland's counsel drafted the assignment and royalty agreement "which Warren Paving reluctantly instructed its legal counsel to review, and, where possible, edit." [*Id.* at ¶ 9.]

The parties agree on what happened next; specifically, on September 1, 2004, Heartland and Warren Paving executed the Contract for the Assignment of an Option to Purchase Real Property with Retained Royalties, (the "Assignment Contract"). [DN 1 at 5, ¶ 18; *see* DN 40-1 at 2, ¶ 9; DN 1-5 (Assignment Contract).] The Assignment Contract assigned Heartland's option to purchase the Property to Warren Paving. [DN 1 at 5–6, ¶ 18.] It also granted Heartland the right to be paid royalties from the limestone Warren Paving planned to mine from the Property. [*See* DN 1-5 at 1–3.] In essence, provided that certain conditions precedent were met, such as Heartland obtaining a mining permit, a loading dock permit, and other necessary permits to assign to Warren Paving, Warren Paving agreed to "pay Heartland a retained royalty of $0.40 per ton" for "limestone mined and loaded for transport from the Property." [*Id.*] The Assignment Contract specifies that "[q]uantities on which the royalty is to be paid will be determined from the belt scale weights as the material is loaded." [*Id.*]

The Assignment Contract outlined specific payment amounts and schedules:

Warren Paving agreed in the Contract for Assignment to pay Heartland in advance an amount of $300,000.00, which equals Heartland's retained royalty on the first 750,000 tons of limestone produced from the Property. Once the first 750,000 tons of limestone were produced, Warren Paving agreed in the Contract

for Assignment to pay Heartland in advance an amount of $300,000.00, which equals Heartland's retained royalty on the second 750,000 tons produced from the Property. After 1,500,000 tons of limestone were produced, Warren Paving agreed in the Contract for Assignment to pay Heartland its retained royalty of $0.40 per ton of limestone produced from the Property on a monthly basis, and Warren Paving further guaranteed the payment of a minimum royalty of $300,000.00 per year to Heartland, regardless of the tonnage of limestone produced during such year.

[DN 1 at 7, ¶ 23; DN 1-5 at 2.] Additionally, the Assignment Contract gave Warren Paving the right to terminate its mining operation and sell the Property and its equipment at any time, provided that any "third-party purchaser shall be bound by all of the terms and conditions of this Assignment [Contract], but in particular, shall be bound by all of the obligations to pay royalties delineated in paragraph III [t]hereof." [DN 1-5 at 3.]

After all of the conditions precedent were satisfied, "Warren Paving then began mining limestone from the Property and paying royalties," including the first advance royalty payment of $300,000. [DN 1 at 8, ¶¶ 25–26.] On June 4, 2007, Warren Paving conveyed the Property to Defendant Slats Lucas LLC, [DN 1-7 (Quitclaim Deed)], which then "leased the Property and limestone quarry back to Warren Paving." [DN 1 at 8–9, ¶ 29.] Warren Paving and/or Slats Lucas continued to make royalty payments to Heartland pursuant to the Assignment Contract.

Next, on July 30, 2009, Heartland assigned one-third of its royalty interest to Walt Gaylord, who, on July 31, 2009, sold that one-third interest to Slats Lucas. [*Id.* at 9. ¶ 30.] In essence, this transaction "reduced Warren Paving's and Slats Lucas's royalty obligation to Heartland from $0.40 per ton to $0.2667 per ton, and reduced the advanced royalty and future annual minimum royalty payment from $300,000 to $200,000. Accordingly, Warren Paving subsequently paid Heartland the second advance royalty payment of $200,000.00." [*Id.*] As a result of this change, Heartland and Warren Paving executed an "Amendment to Contract for the

Assignment of an Option to Purchase Real Property With Retained Royalties", (the "Amended Assignment Contract"), to reflect the change in royalty obligations. [*Id.* at ¶ 31.]

On August 16, 2010, Heartland assigned one half of its remaining royalty interest in the $0.2667 per ton of limestone to Plaintiff William R. Frazer, LLC, ("WRF"), and assigned the other half to Plaintiff Southern Aggregate Distributors, Inc., ("Southern Aggregate"). [*Id.* at 10, ¶ 32 (citing DN 1-9 (Assignment of Royalty).] As a result of these assignments, "WRF and Southern Aggregate each retained a right to receive from Warren Paving or Slats Lucas $0.1333 per ton for each ton of limestone produced from the Property." [*Id.*] According to Plaintiffs, Warren Paving or Slats Lucas thereafter made royalty payments directly to WRF and Southern Aggregate. [*Id.* at ¶ 33.]

On August 6, 2014, however, Warren Paving and Slats Lucas (collectively, "Defendants") brought suit against Heartland, WRF, and Southern Aggregate (collectively, "Plaintiffs"), in this Court. *See Warren Paving, Inc., et. al. v. Heartland Materials, Inc. et. al.*, No. 5:14-CV-149-TBR, 2015 WL 269204 (W.D. Ky. Jan. 21, 2015). In that suit, Warren Paving and Slats Lucas

> alleged that Heartland engaged in wrongdoing in negotiating the option contract with Warren Paving, which entailed continuing payments of royalties to Heartland based on the amount of limestone extracted. [Warren Paving and Slats Lucas] sought (1) a declaratory judgment stating that the assignment contract was void because Heartland did not hold a license to practice real estate brokerage in Kentucky; (2) rescission of the assignment contract based on mistake of fact—Heartland's lack of a real estate brokerage license; (3) damages for Heartland's breach of fiduciary duty in surreptitiously obtaining the option in its own name using Warren Paving's money, requiring Warren Paving to make substantial payments in return for an assignment of the option contract, and continuing to receive payments from Warren Paving; (4) damages based on Heartland's fraud and intentional misrepresentation in obtaining the option; (5) restitution based on the previous allegations; and (6) relief under the theories of assumpsit, unjust enrichment, or constructive trust based on the previous allegations.

*Warren Paving, Inc., et. al. v. Heartland Materials, Inc. et. al.*, No. 15-6052, at *1–2 (6th Cir. July 6, 2016). In a Memorandum Opinion issued on January 21, 2015, this Court dismissed all of Warren Paving and Slats Lucas's claims, finding that each were barred by a five-year statute of limitations period as codified in KRS § 413.120. *Warren Paving*, 2015 WL 269204, at *1–5. The Court also denied Warren Paving and Slats Lucas's motion to reconsider on August 26, 2015. *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-CV-149-R, 2015 WL 5050553, at *1 (W.D. Ky. Aug. 26, 2015), *aff'd* (July 6, 2016). Thereafter, Warren Paving and Slats Lucas appealed to the Sixth Circuit Court of Appeals, which affirmed this Court on July 6, 2016. *Warren Paving*, No. 15-6052 (6th Cir. July 6, 2016). In its decision, the Sixth Circuit determined that this Court properly dismissed Warren Paving and Slats Lucas's claims for declaratory judgment, mistake of fact, breach of fiduciary duty, and fraud on statute of limitations grounds. *Id.*

In the instant lawsuit, the sides are switched. Herein, Heartland, WRF, and Southern Aggregate allege that, "[s]ince entry of the Sixth Circuit's Order on July 6, 2016, Warren Paving and Slats Lucas have refused to pay any royalties to WRF and Southern Aggregate for limestone produced from the Property, in violation of the Contract for Assignment." [DN 1 at 11, ¶ 37.] Additionally, Plaintiffs contend that they "recently discovered that Warren Paving and/or Slats Lucas has never paid the appropriate royalty amount because the tonnage of limestone produced from the Property was not appropriately determined 'from the belt scale weights as the material is loaded.' As a result, WRF and Southern Aggregate were underpaid royalties during the term of the agreement." [*Id.* at 10, ¶ 33.] As a result, Plaintiffs brought claims against Warren Paving and Slats Lucas for breach of contract and a declaration of their right to receive royalties under the Amended Assignment Contract. [*Id.* at 12–15.]

In their answer, Warren Paving and Slats Lucas assert that: 1) they do not legally owe the royalty payments, which are essentially brokerage fees, due to the violation of Kentucky brokerage licensure laws, 2) the Assignment Contract is void ab inito, 3) the Assignment Contract is unenforceable due to a mistake of fact, 4) Heartland breached its fiduciary duties of loyalty and good faith, 5) that the Assignment Contract was procured through fraud, breach of fiduciary duties, or material mistake of fact, 6) Plaintiffs have "unclean hands" by engaging in unauthorized real estate brokerage, 7) the correct amount of royalty payments has been made, and that 8) there is no right to accelerate payments pursuant to the Assignment Contract. [DN 10 at 10–11 (Answer).]

LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Nor will mere speculation suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Both sides have filed motions for summary judgment. Because the same general issues are raised in both parties' motions and are intertwined, the Court will consider the motions together.[2]

---

[2] One of the arguments Defendants make in their response to Plaintiffs' motion for summary judgment is that Plaintiffs' motion "is procedurally premature" because "[t]he factual discovery deadline" had not yet passed at the time the motion was filed and, "[a]lthough the parties have exchanged initial written discovery, no depositions have been taken." [DN 40 at 1.] While this is correct, it is ultimately irrelevant, as the only claims and defenses on which the Court has granted summary judgment in favor of Plaintiffs and against Defendants in this case were decided based on purely legal issues. Further discovery would not affect the disposition of those claims and defenses.

### A. Warren Paving and Slats Lucas's Affirmative Defenses

Plaintiffs, in essence, seek summary judgment on the grounds that this Court already addressed and decided Defendants' affirmative defenses in the prior lawsuit between the same parties, and therefore that Defendants have no basis on which to invalidate the Assignment Contract/Amended Assignment Contract or cease making payments required thereunder. In that suit, the Court granted Heartland's motion to dismiss, finding that all of Warren Paving and Slats Lucas's claims seeking to invalidate the Assignment Contract were barred by the applicable statutes of limitations. *Warren Paving*, 2015 WL 269204, at *1–5. The Sixth Circuit affirmed that decision. *Warren Paving*, No. 15-6052 (6th Cir. July 6, 2016). In their motion for summary judgment, Plaintiffs argue that, in "[t]he same month in which the Sixth Circuit Court of Appeals rendered its Order affirming [this Court], the defendants . . . stopped paying royalties thus forcing the Plaintiffs herein to file this lawsuit so Warren Paving could resurrect its same line of attacks which earlier were found to be time-barred." [DN 30-1 at 9.] In support of their argument that Defendants acted deliberately to invite the present lawsuit, Plaintiffs rely, in part, on statements that Defendants made in filings in the prior lawsuit in which Warren Paving and Slats Lucas were the plaintiffs. Specifically, in their memorandum in support of their motion to deposit funds in that suit, Defendants stated that they

> *could have simply discontinued payments purportedly owed to Defendants as per the terms of the Contract for Assignment thereby forcing Defendants to bring a claim under the Contract for Assignment, and Plaintiffs would defend by, among other things, asserting that the Contract for Assignment is unenforceable for being in violation of Kentucky law.* Instead, Plaintiffs have brought the declaratory judgment action presently before this Court, and now seek to deposit the disputed funds with the Court. [T]his Court should not force Plaintiffs into the position of choosing to cease payments under the Contract for Assignment or paying funds in dispute, and should instead allow Plaintiffs to deposit the funds with the Court.

[DN 10-1 at 6 in 5:14-CV-149; DN 30-13 at 6 (emphasis added).] Defendants do not deny that they ceased making royalty payments in July 2016. According to Plaintiffs, this is further evidence that "Warren Paving intended to deny Heartland and Southern Aggregate the right to receive these payments" in order to force them to bring the instant action for breach of contract.

Indeed, Defendants do raise several arguments as affirmative defenses in this lawsuit that were rejected as time-barred claims in the prior lawsuit in which Warren Paving and Slats Lucas were the plaintiffs. For instance, Defendants asserted the following as claims in the prior lawsuit and as affirmative defenses in this lawsuit: that the Assignment Contract is void and unenforceable, and therefore that Plaintiffs are not entitled to any payments under it, mistake of fact, breach of the fiduciary duties of loyalty and good faith, and fraud. [*See* DN 1 in 5:14-CV-149 (Warren Paving's Complaint in Prior Lawsuit); DN 10 (Warren Paving's Answer in Current Lawsuit).] Each of these claims and defenses were and are aimed at invalidating the Assignment Contract, specifically, the royalty provision, and from preventing Plaintiffs from asserting their right to payments thereunder. [*See* DN 1 in 5:14-CV-149 at 13–14; DN 10 at 10–11.]

In response, however, Warren Paving argues that, "[t]o the extent Warren Paving's *affirmative* claims of breach of fiduciary duties, fraud, and material mistake of fact were barred by statutes of limitations in the prior litigation, they are entitled to be litigated as part of Warren Paving's affirmative defenses here." [DN 40 at 27.] Additionally, Warren Paving asserts that the affirmative defenses it repeats here "were not decided on the *merits* in the prior litigation" and further that "Warren Paving has asserted additional defenses that are *wholly distinct* from its claims in the prior litigation. [*Id.* at 4.] Specifically, Warren Paving asserts that Heartland has 'unclean hands' and it not entitled to the relief it seeks; that, assuming the enforceability of the royalty provision, it has paid the correct amount of royalties; and, that there is no right to

accelerate the Contract of Assignment." [*Id.* (emphasis added).] Similarly, in its motion for summary judgment, Warren Paving argues that "the royalty provision of the Contract for Assignment is unenforceable," [DN 54-1 at 15], because "Kentucky has indisputably adopted a rigid rule precluding enforcement of commission contracts procured by unlicensed brokers." [*id.* at 17 (quoting *Kirkpatrick v. Lawrence*, 908 S.W.2d 125, 129 (Ky. Ct. App. 1995)).]

On the whole, Heartland is correct that Warren Paving is barred from litigating nearly all of its affirmative defenses in this action.[3] The Court rests this conclusion on two primary, overlapping grounds: 1) the rule adopted by the Ninth Circuit in *City of Saint Paul, Alaska v. Evans* and 2) res judicata.

### 1. The *Evans* Rule

First, multiple courts have recognized a rule prohibiting parties from skirting statute of limitations by bringing time-barred claims as affirmative defenses. In *City of Saint Paul, Alaska v. Evans*, the Ninth Circuit held that the Plaintiff, City of Saint Paul, whose "claims were barred by the six-year statute of limitations that Alaska law imposes on lawsuits by municipalities" could not "raise the identical allegations as defenses to [defendant] TDX's counterclaims." *City of Saint Paul, Alaska v. Evans*, 344 F.3d 1029, 1031 (9th Cir. 2003).

According to the *Evans* court, "[t]o hold otherwise would permit plaintiffs, through a sort of jurisdictional jujitsu, to evade the limitations statutes by bringing a time-barred declaratory judgment action, waiting for the defendant to assert its interests in the form of a counterclaim, and then raising the identical time-barred claims as defenses." *Id.* In reaching this conclusion, the *Evans* court first acknowledged that "courts generally allow defendants to raise defenses that, if raised as claims, would be time-barred." *Id.* at 1033. However, the court went on to explain that,

---

[3] As the Court will explain in greater detail below, Warren Paving and Slats Lucas are *not* barred from asserting its final two affirmative defenses: that the correct amount of royalties have been paid and that there is no right to accelerate payments under the Assignment Contract.

in cases in which courts have allowed this practice, "[a] common thread running through these cases is the emphasis on the respective roles of the parties in the litigation as a whole." *Id.* at 1035. Specifically, "[i]t is important that the party asserting the defense is not, simultaneously or in parallel litigation, seeking affirmative recovery on an identical claim. Thus, whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation posture." *Id.* "In other words, a plaintiff cannot engage in a subterfuge to characterize a claim as a defense in order to avoid a temporal bar." *Id.*

The *Evans* court additionally relied on an instructive Second Circuit case, *118 E. 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 202–03 (2d Cir. 1982), to exemplify what it means to examine "the respective roles of the parties in the litigation as a whole." *Id.* at 1035. In that case,

> a group of property owners sought, among other things, rescission and modification of a ten-year-old lease agreement, alleging that the property company had inserted unfair and unconscionable terms into the lease. Although the owners admitted that their claims for affirmative relief were time-barred, they sought a declaratory judgment that would entitle them to a setoff and defense against future claims by the company to enforce lease obligations. Concluding that the "plaintiff is ... more of an aggressor than defendants" and that the "[d]efendants have done nothing concrete to change the basic relations between the parties as they have existed for over ten years," the Second Circuit rejected the owners' argument and held that New York's statute of limitations barred the declaratory judgment claims.

*Id.* (citing *118 E. 60th Owners*, 677 F.2d at 202–204) (internal citations omitted). Relying on *118 E. 60th Owners*, the *Evans* court explained that "the City cannot escape the conclusion that it is the aggressor in this litigation. The City initiated the lawsuit and there is no question that the City 'disturbed the equilibrium between the parties' by first challenging the validity of the Agreement in court." *Id.*

Similarly, here, Warren Paving and Slats Lucas are the aggressors. They brought suit in 2014 seeking to rescind the Assignment Contract, ten years after it was first entered into and

during which time they continuously paid the royalties enumerated therein. When this Court determined that Defendants' claims for declaratory judgment, mistake of fact, breach of fiduciary duty, fraud, and misrepresentation were all time-barred, and after the Sixth Circuit affirmed that determination, Defendants stopped making their royalty payments, thereby inviting the instant lawsuit, in which they now seek to bring many of the same time-barred claims as affirmative defenses. In other words, it is Defendants who "disturbed the equilibrium between the parties." *118 E. 60th Owners*, 677 F.2d at 205. Here, as in *Evans*, "this lawsuit boils down to the [Defendants'] effort to invalidate the Agreement," and Defendants' "defenses . . . are mirror images of [their] time-barred claims." *Evans*, 344 F.3d at 1035. Accordingly, the Court agrees that, in these circumstances, Defendants "cannot hide behind the maxim applicable to defenses asserted in the normal course nor may [they] sidestep the temporal bar to [their] claims." *Id.* at 1036.

In 2014, the District Court for the District of Delaware adopted *Evans* and explained that "24HFW is indeed the initial aggressor in this case, despite being the defendant in litigation." *Davis v. 24 Hour Fitness Worldwide, Inc.*, 75 F. Supp. 3d 635, 639 (D. Del. 2014). In reaching this holding, the *Davis* court explained that the case arose when defendant 24HFW's board of directors repudiated the phantom stock agreement ("PSA"), which required payments to be made to the board chairman, plaintiff Davis. *Id.* The court found that "[t]his repudiation 'disturbed the equilibrium' between the parties, as it had existed for several years while the PSA was presumed valid." *Id.* And, "rather than initiate a lawsuit of its own, 24HFW elected simply to repudiate the PSA and invite a lawsuit from Davis." *Id.*

In *Davis*, 24HFW "asserted identical affirmative defenses and counterclaims for affirmative relief," arguing that even though the claims for affirmative relief may be untimely,

the court should still consider the affirmative defenses. *Id.* Applying *Evans*, the court disagreed, explaining that, "[u]nder these circumstances, the court finds that 24HFW 'abandoned its right to seek solace in the status of a defendant' and 'cannot hide behind the maxim applicable to defenses asserted in the normal course nor may it sidestep the temporal bar to its claims.'" *Id.* (quoting *Evans*, 344 F.3d at 1036). The facts of *Davis* are highly analogous to the facts of this case. Here, it was Warren Paving and Slats Lucas who stopped paying royalties as required under the Assignment Contract, which invited the instant breach of contract lawsuit from Plaintiffs. Now, Defendants wish to assert their formerly time-barred claims as affirmative defenses to argue that the Assignment Contract is unenforceable due primarily to a violation of Kentucky real estate brokerage laws. Like the *Davis* court, however, the Court finds that Warren Paving and Slats Lucas are "the initial aggressor[s] in this case, despite being the defendant[s] in litigation." *Id.* Accordingly, "[a]lthough the general rule is that affirmative defenses face no such time bar, the court is persuaded that an exception applies here." *Id.*

Most recently, the Fourth Circuit also adopted the exception enumerated in *Evans*. In *Agnew v. United Leasing Corp.*, "[t]he Agnews [ ] attempt[ed] to avoid the statute of limitations by styling their breach of contract claims as seeking a declaratory judgment on an affirmative defense." 680 F. App'x 149, 154 (4th Cir. 2017). Applying *Evans*, the Fourth Circuit held that, in essence, the Agnews' lawsuit boiled down to an effort to invalidate a forbearance agreement between them and defendant United Leasing, which the Agnews owed money under a promissory note and several leases. *Id.* at 150–51, 154 (citing *Evans*, 344 F.3d at 1035). Therefore, the court concluded that "the Agnews cannot characterize these time-barred claims as affirmative defenses in order to invalidate the Forbearance Agreement." *Id.* at 154.

In sum, when conducting a "realistic assessment of the parties' litigation posture," it is clear to the Court that Warren Paving and Slats Lucas are the "the aggressor[s] in this litigation." *Evans*, 344 F.3d at 1035.[4] Though it does not appear that the Sixth Circuit has addressed this specific issue, and "[n]otwithstanding the fact that *Evans* is non-binding authority, the court is convinced that its analysis (and result) should apply in this case." *Davis*, 75 F. Supp. 3d at 638–39. Accordingly, the affirmative defenses Warren Paving and Slats Lucas asserted as claims in the prior litigation and which were found to be time-barred in that case are likewise barred in the present case. Because the analysis of which affirmative defenses were previously litigated and are therefore barred in this action overlaps with the Court's application of res judicata principles below, the Court will identify exactly which affirmative defenses are barred below in its application of that doctrine.

## 2. Res Judicata

Defendants are also barred from asserting most of their affirmative defenses in this action under the doctrine of res judicata, as most of the defenses have already been litigated and decided as claims in the prior litigation. The Sixth Circuit recently discussed the "fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, [ ] that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same

---

[4] Defendants make only one attempt to distinguish *Evans* and *Davis*. Specifically, Defendants make a distinction on the basis that, in those cases, parties tried to assert affirmative defenses in the *same case* as the case in which they tried to assert their time-barred claims. [DN 40 at 24 n. 33.] According to Defendants, because this situation involves two separate cases, *Evans* is inapplicable. [*Id.*] The Court disagrees. The basic principle of *Evans*, that Courts must conduct a "realistic assessment of the parties' litigation posture" to determine whether a party may raise affirmative defenses that, if brought as claims, would be time barred, can be applied equally in cases in which two different lawsuits are involved. Indeed, Defendants make an argument that is identical to one rejected in *Davis*, that even if "Warren Paving's *affirmative* claims of breach of fiduciary duties, fraud, and material mistake of fact were barred by statutes of limitations in the prior litigation, they are entitled to be litigated as part of Warren Paving's affirmative defenses here." [*Id.* at 27.] For the same reasons as the courts explained in *Evans* and *Davis*, this "jurisdictional jujitsu" is impermissible. *Evans*, 344 F.3d at 1031.

parties.' " *FCA US, LLC v. Spitzer Autoworld Akron, LLC*, 887 F.3d 278, 288 (6th Cir. 2018) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "The doctrine of res judicata includes two kinds of preclusion: 'issue preclusion', [also called collateral estoppel], and 'claim preclusion', [also called res judicata]." *Brooks v. Whirlpool Corp.*, 499 F. App'x 450, 451 (6th Cir. 2012) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1 (1984)); *see also Heyliger v. State Univ. & Cmty. Coll. Sys. of Tennessee*, 126 F.3d 849, 851 (6th Cir. 1997) ("This court reviews de novo a district court's decision with regard to issue preclusion (collateral estoppel) or claim preclusion (res judicata in its narrow sense)."). However, "[m]ost of the decisions use the terms 'issue preclusion' and 'claim preclusion' rather than 'collateral estoppel' and 'res judicata,' to avoid confusion of the use of 'res judicata' to mean the entire body of preclusion law with its narrow use as a synonym for 'claim preclusion.'" *DLX, Inc. v. Kentucky*, 381 F.3d 511, 521 (6th Cir. 2004).

"[I]ssue preclusion prevents parties from 'raising an argument that they already fully litigated in an earlier legal proceeding.'" *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F. App'x 484, 488–89 (6th Cir. 2017) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015)). More specifically, "issue preclusion, bars 'successive litigation of an *issue of fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014) (emphasis added) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). Issue preclusion "bars the relitigation of *issues*, regardless of the nature of the legal claims." *W.J. O'Neil*, 700 F. App'x at 490 (emphasis added). For issue preclusion to apply, four elements must be met:

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the

outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Arkansas Coals*, 739 F.3d at 320–21 (quoting *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012)). The Court will address each of these elements in the context of each of the affirmative defenses Warren Paving and Slats Lucas assert in this case.[5]

### (a) Mistake of Fact, Breach of Fiduciary Duty, Fraud, and Voidness

With regard to Defendants' affirmative defenses of mistake of fact, breach of fiduciary duty, fraud, and that the Assignment Contract is void ab initio, (Defendants' fourth, fifth, sixth, and seventh defenses), it is clear that the elements of issue preclusion are satisfied. First, each of these issues were raised and actually litigated in the prior proceedings. Specifically, in their complaint in the prior lawsuit, Defendants brought claims for 1) mistake of fact based on the mistaken belief that "Heartland had the authority and proper licensing in Kentucky to engage in real estate brokerage," 2) breach of fiduciary duties in purchasing the option to buy the Property and in requiring Warren Paving to agree to royalty payments in exchange for assignment of the option, 3) fraud and intentional misrepresentation regarding the purchasing of the option in Heartland's name, and Defendants 4) sought a declaratory judgment finding that "[t]he Contract for Assignment is . . . void," that Heartland and Southern Aggregate "are not entitled to any payments under it." [DN 1 at 8–13 in 5:14-CV-149.] First, each of these claims, and whether they were barred by the applicable statutes of limitations, were "actually litigated" by the parties.

---

[5] Defendants identify "eleven" defenses in their answer. [*See* DN 10.] However, the first defense asserts failure to state a claim, which is not at issue in the pending motions, and the second defense merely consists of Defendants' responses, admissions, and denials of the specific allegations in Plaintiffs' complaint. Additionally, the eleventh defense merely reserves the right to argue additional defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure. None of these affirmative defenses are alleged to be time-barred. Accordingly, the only affirmative defenses the Court will address herein are Defendants' third through tenth defenses.

Both sides submitted extensive briefing on the issue of whether these claims were time-barred and Defendants filed an additional motion to reconsider after the Court issued its initial Memorandum Opinion granting Heartland's motion to dismiss on limitations grounds.

Second, the determination of these issues was necessary to, and indeed, determined, the outcome of the prior proceedings because the Court could not proceed without first determining whether Defendants' claims in the prior lawsuit were timely filed.

Third, the prior proceeding resulted on a final judgment on the merits; specifically, the Court dismissed each claim on statute of limitations grounds. The Court determined that a five-year statute of limitations applied to each of Defendants' claims for declaratory judgment finding the contract void, mistake of fact, breach of fiduciary duties, and fraud and misrepresentation. *Warren Paving*, 2015 WL 269204, at *3–5. As part of that decision, the Court rejected Defendants' arguments that certain of the statutes of limitations, such as for its mistake of fact and fraud claims, were tolled on the basis of the discovery rule. *Id.* at *4–5. In detail, the Court explained that Defendants failed to

> explain[ ] why, with exercise of reasonable diligence, they did not discover that Heartland was not in possession of a real estate license for nearly ten years. There was no allegation presented in the Complaint that Heartland actively hid this fact, nor any indication that Plaintiffs made an attempt to discover Heartland's licensing status, despite this being a matter of public record.

*Id.* at *4. The Sixth Circuit affirmed this holding, explaining that Warren Paving and Slats Lucas

> contend that the exercise of due diligence did not require them to seek this information, but they have not provided any Kentucky or Sixth Circuit precedent in support of this contention, nor have they provided any facts or arguments establishing that they could not obtain information regarding Heartland's lack of a license earlier.

*Warren Paving*, No. 15-6052, at *3–4 (6th Cir. July 6, 2016).

Defendants argue, however, that the issues of mistake of fact, breach of fiduciary duty, fraud, and voidness "were not decided on the *merits* in the prior litigation" because "the affirmative claims were dismissed *solely* on the basis of various statutes of limitation." [DN 40 at 3–4 (emphasis added).] However, this argument flies in the face of Sixth Circuit precedent. The Sixth Circuit has long held that "a dismissal for failing to comply with a statute of limitations is a decision on the merits for [ ] preclusion purposes." *Mitchell v. Chapman*, 343 F.3d 811, 820 (6th Cir. 2003) (citing *Nathan v. Rowan,* 651 F.2d 1223, 1226 (6th Cir. 1981)); *see also Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 767 (6th Cir. 2015) ("We reached the merits of the excessive-force challenge, because dismissals on statute-of-limitations grounds are judgments on the merits."). Therefore, the dismissal of Defendants' claims of mistake of fact, breach of fiduciary duty, fraud, and voidness on statute of limitations grounds was a judgment on the merits for issue preclusion purposes.

Fourth, Defendants, against whom issue preclusion is asserted in this case, "had a full and fair opportunity to litigate the issue[s] in the prior proceeding." *Arkansas Coals*, 739 F.3d at 320–21. This element is satisfied here for the simple reason that Defendants *were* a party in the prior litigation. While claim preclusion requires that the present and former action be "between the same parties," *Chapman*, 343 F.3d at 819, issue preclusion does not. However, the fact that this element is nonetheless satisfied here demonstrates that Defendants certainly had a full and fair opportunity to litigate their own claims in the prior action. As the Court already noted, both parties extensively argued and briefed the statute of limitations issues in the prior lawsuit.

In sum, all four elements of issue preclusion are satisfied with regard to Defendants' affirmative defenses of mistake of fact, breach of fiduciary duty, fraud, and voidness. Defendants attempt to distinguish the issues in their affirmative defenses in this case from their claims in the

prior lawsuit based on the specific type of *relief* they seek in the present case. Specifically, Defendants state in their answer, at the end of their third, sixth, and seventh defenses, that because Plaintiffs were never entitled to royalty payments due to the breach of KRS § 324.020(2), they "are entitled to set-off or recoupment as to any amounts claimed by plaintiffs." [DN 10 at 10–11.] According to Defendants, therefore, their "claims for set-off or recoupment are not time-barred" because they were not raised in the prior lawsuit. [DN 40 at 3.] This argument is unpersuasive, however, in light of the fact that Defendants' claims for a set-off or recoupment are included in the same paragraphs as their third, sixth, and seventh defenses, each of which is time-barred. [*See* DN 10 at 10–11.] Because the affirmative defenses themselves are time-barred, any claim for set-off or recoupment *on the basis* of those defenses also fails. Accordingly, Defendants' fourth, fifth, sixth, and seventh affirmative defenses are barred by the doctrine of issue preclusion.

### (b) The Enforceability of the Royalty Provision

Warren Paving's third defense reads as follows:

> It is undisputed that, at all times relevant hereto, neither Heartland nor its officers were licensed real estate brokers under Kentucky law. The royalties which Plaintiffs seek in this lawsuit are tantamount to a "brokerage fee" or real estate commission. As such, they are not legally owed. Additionally, Defendants are entitled to set-off or recoupment as to any amounts claimed by Plaintiffs.

[DN 10 at 10.] In response to Plaintiffs' motion for summary judgment, Defendants explain that, because Heartland allegedly violated Kentucky law by failing to possess a brokerage license, "the contractual provision requiring the payment of royalties which are, in essence, a real estate commission, is void or unenforceable." [DN 40 at 2.] According to Defendants, this affirmative defense is distinct from its other, time-barred defense that "the Contract of Assignment is void *ab initio* and unenforceable under Kentucky law." [DN 10 at 10.]  Specifically, Defendants argue

that "a claim that the entire Contract of Assignment is void *ab initio* (which was Warren Paving's claim in the prior litigation) is separate and distinct from the potential unenforceability of a real estate commission *provision* in the Contract of Assignment." [DN 44-1 at 2 (emphasis added).]

The distinction Defendants attempt to make is a distinction without a difference for issue preclusion purposes. In the prior suit, Defendants alleged that Heartland engaged in real estate brokerage without a license in violation of KRS § 324.020(2), which provides that "No person shall practice real estate brokerage with respect to real estate located in this state unless . . . (a) The person holds a license to practice real estate brokerage under this chapter." Ky. Rev. Stat. Ann. § 324.020(2)(a). Defendants claimed, therefore, that "Heartland was prohibited from . . . obtaining the consideration it negotiated in the Contract for Assignment." [DN 1 at 8 in 5:14-CV-149.] Accordingly, Defendants asserted that the Assignment Contract was "void" and that "Defendants are not entitled to any payments under the Contract." [*Id.*] In dismissing that claim, this Court explained that, "Plaintiffs are suing based on a statutory violation, Heartland's failure to possess a real estate license. Without ruling on whether the statute was violated in this case, the proper statute of limitations to apply is [the five year statute of limitations in] KRS § 413.120(2)." *Warren Paving*, 2015 WL 269204, at *4. Applying that limitations period, the Court dismissed the claim.

Here, the issue is identical. Defendants assert in their third defense that, because "neither Heartland nor its officers were licensed real estate brokers under Kentucky law[,] [t]he royalties which Plaintiffs seek . . . are not legally owed." [DN 10 at 10.] Once again, then, the issue is the violation of KRS § 324.020(2), which the Court has already determined is time-barred by the five-year statute of limitations codified in KRS § 413.120(2). "The 'identity of issues' element

requires that 'the key issue in both cases is the same....'" *Georgia-Pac.*, 701 F.3d at 1098

(quoting *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 908–09 (6th Cir. 2001)).

Accordingly, "[w]here a litigant brings repeated actions based upon the *same operative facts*,

issue preclusion may still properly apply despite a *change in legal theory*." *Id.* (citing *Randles v.

Gregart,* 965 F.2d 90, 93 (6th Cir. 1992)). The core issue in both instances is the allegation that

Plaintiffs are not entitled to royalty payments due to a violation of KRS § 324.020(2). As Sixth

Circuit precedent makes clear, simply repackaging one legal theory, (voidness of a contract due

to a statutory violation), into another, (unenforceability of a contract provision due to a statutory

violation), is insufficient to avoid issue preclusion.

Whether Defendants use the phrase "void" or "unenforceable" in seeking to invalidate the

royalty provision does not change the fact that this *issue* was already litigated and decided on the

merits in the prior lawsuit. Issue preclusion "bars the relitigation of *issues*, regardless of the

*nature* of the legal claims." *W.J. O'Neil*, 700 F. App'x at 490 (emphasis added). Because the

determination of this issue was necessary to the prior judgment and because Defendants likewise

had a full and fair opportunity to litigate this issue in the prior case, Defendants third defense is

also barred under the doctrine of issue preclusion.

### (c) Unclean Hands

Warren Paving's eighth defense states:

> Alternatively, as a further defense, Defendants contend that by engaging in the
> real estate practice in violation of KRS §§ 324.010(1), 324.010(5), and
> 324.020(2), as well as engaging in fraudulent conduct, Plaintiffs have "unclean
> hands" and are precluded from obtaining the judicial relief they seek.

[DN 10 at 11.] According to Defendants, the defense of "unclean hands" is "wholly distinct from

its claims in the prior litigation." [DN 40 at 4.] The Court disagrees, for largely the same reasons

that Defendants' third defense is barred by the doctrine of issue preclusion. Specifically, this

argument is once-again a mere reiteration of Defendants' time-barred claims. Defendants assert that Plaintiffs have unclean hands due to a violation of KRS § 324.020(2), Kentucky's brokerage licensing statute. However, claims based on a violation of § 324.020(2) are precisely what both this Court and the Sixth Circuit already determined are time-barred in Defendants' prior lawsuit. Once again, the same "operative facts" are at issue, despite Defendants' "change in legal theory." *Georgia-Pac.*, 701 F.3d at 1098. Regardless of how Defendants phrase their legal theory of "unclean hands," the issue of the violation of KRS § 324.020(2) was already litigated and decided on the merits in the prior lawsuit. Further, the determination of this issue was necessary to the prior judgment and Defendants had a full and fair opportunity to litigate the issue in the prior case. Accordingly, Defendants' eighth affirmative defense also is barred under the doctrine of issue preclusion.

The Court further notes that "the question of preclusion . . . turns on case-specific factual questions . . . [and] likewise turns on the court's 'sense of justice and equity.'" *Roberson v. Torres*, 770 F.3d 398, 404–05 (6th Cir. 2014) (quoting *Blonder–Tongue Labs., v. Univ. of Ill. Found.,* 402 U.S. 313, 334 (1971)). Here, in addition to the fact that the elements of issue preclusion are satisfied as a matter of law, justice and equity also weigh strongly in favor of applying the doctrine in this case. The evidence in this case points directly to a finding that Defendants' decision to cease making royalty payments pursuant to the Assignment Contract almost immediately following the Sixth Circuit's affirmance of this Court was a calculated effort to invite the instant lawsuit from Plaintiffs so that Defendants could assert their time-barred claims as affirmative defenses. With regard to Defendants' third, fourth, fifth, sixth, seventh, and eight defenses, this effort is unsuccessful. "To hold otherwise would permit [defendants], through a sort of jurisdictional jujitsu, to evade the limitations statutes by bringing a time-barred

. . . action, waiting for the [plaintiff] to assert its interests . . . and then raising the identical time-barred claims as defenses." *Evans*, 344 F.3d at 1031. The Court will not allow this.

Finally, because the sole ground on which Defendants move for summary judgment is the allegation that, "[u]nder Kentucky law, the royalty fee provision of the Contract for Assignment is unenforceable," [DN 54-1 at 18], and because all of Defendants' affirmative defenses in support of this argument are barred by the *Evans* rule and the doctrine of issue preclusion, Defendants' motion for summary judgment is denied.

### (d) The Amount of Royalties Paid and Acceleration of the Assignment Contract

The only affirmative defenses that remain for the Court to consider are Defendants' ninth and tenth defenses, which read:

#### NINTH DEFENSE

Alternatively, as a further defense, Defendants contend that the correct amount of the purported royalty (i.e., real estate brokerage) payments have been made under the terms of the Contract for Assignment.

#### TENTH DEFENSE

Alternatively, as a further defense, Defendants contend that there is no right to accelerate payments under the terms of the Contract of Assignment.

[DN 10 at 11.]

Unlike the affirmative defenses of mistake of fact, breach of fiduciary duty, fraud, voidness, unenforceability of the royalty provision, and unclean hands, the issues raised in Defendants ninth and tenth defenses were not raised in the prior lawsuit because those issues had not yet arisen. It is axiomatic "that *res judicata* simply cannot bar a claim that did not exist at the time of the first proceeding." *BellSouth Telecommunications, Inc. v. Kentucky Pub. Serv. Comm'n*, No. CIV.A.3:08-33-DCR, 2008 WL 5173334, at *8 (E.D. Ky. Dec. 10, 2008). Here, Defendants' ninth defense is a direct response to Plaintiffs' allegation in this action that:

> WRF and Southern Aggregate *recently discovered* that Warren Paving and/or
> Slats Lucas has never paid the appropriate royalty amount because the tonnage of
> limestone produced from the Property was not appropriately determined "from the
> belt scale weights as the material is loaded." As a result, WRF and Southern
> Aggregate were underpaid royalties during the term of the agreement.

[DN 1 at 10, ¶ 33.] Because Plaintiffs only "recently discovered" the allegedly underpaid royalty payments, it is clear that this allegation was not an issue in the prior lawsuit. Therefore, Defendants' ninth affirmative defense is not barred under the doctrine of issue preclusion.

Nor is the tenth defense barred, because the issues of breach and specific performance also were not at issue in the prior litigation. That being said, however, it does not appear that Plaintiffs have requested "acceleration of payments" at all. Plaintiffs do not mention acceleration once in their complaint, [*see* DN 1.] Rather, Plaintiffs merely request the payment of any missed payments since July 2016 and specific performance of future payments which will become due under the Assignment Contract. [DN 2 at 15–16.] Accordingly, Defendants' tenth affirmative defense is inapplicable to this case and does not affect the Court's determination of whether Plaintiffs are entitled to summary judgment on their claims.

### B.  Heartland, WRF, and Southern Aggregate's Claims

Now that the Court has determined which of Defendants' affirmative defenses are viable, the Court must determine whether Plaintiffs are entitled to summary judgment on their claims. Plaintiffs' first claim alleges breach of the Assignment Contract and the Amended Assignment Amended, while their second, related claim is for a judgment declaring that Warren Paving and Slats Lucas are contractually obligated to pay royalties on limestone pursuant to the Amended Assignment Contract.[6]

---

[6] Plaintiffs initially brought a third claim seeking a judgment against Trustmark National Bank "declaring that [Heartland's] right of first refusal is superior to Trustmark's security interest in the Property." [DN 1 at 15, ¶ 63.] However, Plaintiffs later "dismiss[ed] . . . their claims filed against Trustmark National Bank." [DN 13.] Accordingly, only Plaintiffs' first two claims remain pending before the Court.

## 1. Breach of Contract

Plaintiffs allege two different breaches: 1) breach since the Assignment Contract was entered into in 2004 for failure to properly weigh the limestone "from the belt scale weights as the material is loaded" for purposes of calculating royalty payments, and 2) breach for ceasing making royalty payments beginning in July 2016. [DN 1 at 13, ¶¶ 44–45.]

With regard to the claim that Defendants have breached the Assignment Contract by failing to determine the correct royalty weight from the belt scale weights, however, Plaintiffs have submitted no evidence in support of this assertion. Plaintiffs attach five affidavits to their motion for summary judgment; however, none of the affiants assert that the limestone was not properly weighed using the belt scale method. [*See* DN 30-4 at 1–8 (William Frazer Affidavit); DN 30-9 at 1–3 (John William Bogle, Jr. Affidavit); DN 30-10 at 1–4 (Robert Frazer Affidavit); DN 30-11 at 1–2 (Zachary Greenwell Affidavit).] Other than various contractual and real estate documents at issue in the case, Plaintiffs attach no other evidence to their motion. Moreover, Defendants assert, in their ninth affirmative defense, that "the correct amount of the purported royalty . . . payments have been made under the terms of the Contract for Assignment." [DN 10 at 11.] Federal Rule of Civil Procedure 56 provides that "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Without citation to evidence that Defendants have, since 2004, underpaid royalties as a result of failing to measure limestone using belt scale weights, Plaintiffs are not entitled to summary judgment on this portion of their breach of contract claim at this time.

With regard to the second allegation of breach, however, Plaintiffs have successfully shown that Defendants breached the Amended Assignment Contract, [DN 30-3 at 1–5], by ceasing all royalty payments after June 2016. The 2009 Amendment to the Assignment Contract states that Heartland's retained royalty interest is $0.2667 "per ton for limestone mined and shipped or loaded for transport from the Property." [*Id.* at 3.] As the Court explained above, the $0.2667 figure represents Heartland's remaining royalty interest following the assignment of one-third of its royalty interest to Walt Gaylord, who, on July 31, 2009, sold that one-third interest back to Slats Lucas. [DN 1 at 9. ¶ 30.] As a result of Heartland's subsequent assignments, WRF and Southern Aggregate are each entitled to half of that amount, or $0.1333 each per ton of limestone.

Both William Frazer, manager of WRF, and John William Bogle, Jr., owner and shareholder of Southern Aggregate, allege in their affidavits that no payments have been received since the end of June 2016. [DN 30-4 at 7 (William Frazer Affidavit); DN 30-9 at 3 (Bogle Affidavit).] Defendants do not dispute these contentions in their response or sur-reply to Plaintiffs' motion for summary judgment, [*see* DN 40; DN 44.], or in their own motion for summary judgment, [*see* DN 54.] Accordingly, the allegation that Warren Paving ceased making payments after June 2016 is undisputed. Moreover, other than Defendants' third through eighth affirmative defenses, each of which the Court has rejected as time-barred and precluded, Defendants have made no argument that the Assignment Contract, the Amended Assignment Contract, or the royalty provisions, are unenforceable. Additionally, there is no assertion that the terms of the agreements are ambiguous, and the Court cannot discern any ambiguity.

Under Kentucky law, "[i]f a contract is not ambiguous, it 'will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its

ordinary meaning and without resort to extrinsic evidence.'" *Cogent Sols. Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 310 (6th Cir. 2013) (quoting *Hazard Coal Corp. v. Knight,* 325 S.W.3d 290, 298 (Ky. 2010)). Here, the Amended Assignment Contract makes clear that Heartland has a retained royalty interest of $0.2667 collectively "per ton for limestone mined and shipped or loaded for transport from the Property." [DN 30-3 at 3.] It is undisputed that Defendants made payments as required under the terms of the Assignment Contract from 2004 to 2009, and then under the terms of the Amended Assignment Contract from 2009, when the Amendment was executed, to late June 2016, after which time Defendants ceased making payments. Accordingly, Defendants have breached the plain and unambiguous terms of the Amended Assignment Contract, specifically, with regard to the obligation to pay royalties to Plaintiffs. Therefore, Plaintiffs' motion for summary judgment on its breach of contract claim with regard to the lack of royalty payments since June 2016 is granted. As to the missed payments Plaintiffs are owed from July 2016 to the present, Plaintiffs are entitled to monetary damages, the amount of which shall be determined through a damages hearing. As to future payments, Plaintiffs are entitled to specific performance.

### 2. Declaratory Judgment

Next, to clear up any future confusion or debate, Plaintiffs seek a declaration that Warren Paving and Slats Lucas are contractually obligated to pay royalties on limestone pursuant to the Amended Assignment Contract. 28 U.S.C. § 2201(a) provides that a

> court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a). "Declaratory judgments are often pursued to determine parties' contractual obligations. '[W]here there is controversy as to the meaning and effect of a written

contract[,] interpretation may be sought from and made by the declaratory judgment of a court having jurisdiction over the parties.'" *Jesa Enterprises Ltd v. Thermoflex Corp.*, No. 16-10885, 2016 WL 4376176, at *5 (E.D. Mich. Aug. 17, 2016) (quoting *Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)).

As the Court explained above, the terms of the Amended Assignment Contract are clear and unambiguous. Therefore, the Court will grant Plaintiffs' request for a declaration of the parties' rights under the agreement. Specifically, the Court declares that Warren Paving and Slats Lucas are contractually obligated to pay royalties for all limestone mined and shipped or loaded for transport from the Property pursuant to the terms of the Amended Assignment Contract and the royalty obligation enumerated therein.

CONCLUSION

For the reasons explained in detail above, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiffs' motion for summary judgment, [DN 30], is **GRANTED IN PART AND DENIED IN PART**. It is granted with regard to Plaintiffs' request for declaratory judgment and their claim for breach of the Amended Assignment Contract due to Defendants' failure to make royalty payments after June 2016. It is denied with respect to Plaintiffs' claim that Defendants have also breached the Assignment Contract and the Amended Assignment Contract by underpaying royalties since 2004 by failing to determine payments using the belt scale weights.

(2) Defendants' motion to file a sur-reply, [DN 44], is **GRANTED.** Therefore, Plaintiffs' motion to strike this motion and the proposed sur-reply, [DN 45], is **DENIED**.

(3) Defendants' motion for summary judgment, [DN 54], is **DENIED**.

(4) A Telephonic Status Conference is **SET** for **June 5, 2018 at 2:00 p.m. Central Time**.

The Court shall place the call.

(5) **IT IS SO ORDERED**

cc:    Counsel

**Thomas B. Russell, Senior Judge**
**United States District Court**

29

May 21, 2018