HEARTLAND MATERIALS, INC., *et al.*                           PLAINTIFFS

v.

WARREN PAVING, INC., *et al.*                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon a motion by Plaintiffs Heartland Materials, Inc., William R. Frazer, LLC, and Southern Aggregate Distributors, Inc., [DN 101], for Attorney Fees, Expenses, and Costs. Plaintiffs also filed a Brief Regarding Interest that is incorporated into Plaintiffs' motion. [DN 99]. Defendants, Warren Paving, Inc. and Slats Lucas, LLC have filed their response, [DN 105], and Plaintiffs' have replied. [DN 106]. Fully briefed, this matter is ripe for review, and for the following reasons is **GRANTED in part and DENIED in part.**

## BACKGROUND

This action arises out of a contract between Heartland Materials, Inc. ("Heartland") and Warren Paving, Inc. ("Warren Paving"). Heartland and Warren Paving executed a contract for the assignment of an option to purchase real property with retained royalties ("The Assignment Contract"). [DN 1 at 5; *see* DN 40-1 at 2; DN 1-5]. The property at issue ("the Property") consisted of "approximately 339 acres of land on two contiguous tracts located in Livingston County, Kentucky." [DN 1 at 4]. The Assignment Contract assigned Heartland's option to purchase the property to Warren Paving. [DN 1 at 5-6]. As part of the Assignment Contract, Warren Paving agreed to pay royalties to Heartland on limestone mined from the Property. *Id.*

Each party eventually sold or assigned portions of their interests to other parties. To reflect the resulting changes in royalty obligations, the parties executed an Amendment to Contract for

the Assignment of an Option to Purchase Real Property with Retained Royalties (the "Amended Assignment Contract"). After paying royalties pursuant to the Amended Assignment Contract for about ten years, Warren Paving and Slats Lucas, LLC ("Slats Lucas") brought suit (the "Prior Litigation") against Heartland, William R. Frazer, LLC ("WRF"), and Southern Aggregate Distributors, Inc. ("Southern Aggregate"). *See Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 5:14-CV-149-TBR, 2015 U.S. Dist. LEXIS 6456, 2015 WL 269204 (W.D. Ky. Jan. 21, 2015).

In the Prior Litigation, Warren Paving and Slats Lucas sought, in part, "(1) a declaratory judgment stating that the assignment contract was void because Heartland did not hold a license to practice real estate brokerage in Kentucky; [and] (2) rescission of the assignment contract based on mistake of fact. . . ." *Warren Paving, Inc. v. Heartland Materials, Inc.*, No. 15-6052, 2016 U.S. App. LEXIS 24301, *1-2 (6th Cir. July 6, 2016). This Court dismissed all of Warren Paving and Slats Lucas's claims in the Prior Litigation. *Warren Paving*, 2015 U.S. Dist. LEXIS 6456. On July 6, 2016, the Sixth Circuit Court of Appeals affirmed the dismissal. *Warren Paving*, No. 15-6052, 2016 U.S. App. LEXIS 24301 (6th Cir. July 6, 2016).

After the Sixth Circuit Court of Appeals affirmed this Courts dismissal of the Prior Litigation, Warren Paving and Slats Lucas (collectively "Defendants") ceased making royalty payments to Heartland, WRF, and Southern Aggregate (collectively "Plaintiffs"). Plaintiffs then brought suit (the "Current Litigation") against Defendants for breach of contract and a declaration of their right to receive royalties under the Amended Assignment Contract. [DN 1 at 12-15]. More specifically, Plaintiffs alleged that (1) Defendants breached the contract by failing to pay the appropriate royalty amount because the tonnage of limestone produced from the Property had not been measured in compliance with the terms of the agreement, and (2) Defendants breached the

contract by failing to tender royalty payments after entry of the Sixth Circuit's order on July 6, 2016.

In the Current Litigation, this Court granted summary judgment to Plaintiffs on their breach of contract claim with regard to the lack of royalty payments since June 2016. The Court also held that "Warren Paving and Slats Lucas are contractually obligated to pay royalties for all limestone mined and shipped or loaded for transport from the Property pursuant to the terms of the Amended Assignment Contract and the royalty obligation enumerated therein." [DN 67 at 28]. This Court did not grant summary judgment on Plaintiffs' claim that Defendants breached the contract by underpaying royalties prior to June 2016. [*Id.* at 26]. After this Court granted partial summary judgment, Plaintiffs filed a motion to dismiss their remaining claim for underpayment of royalties. [DN 75]. This Court granted Plaintiffs' motion to dismiss. [DN 84].[1]

Plaintiffs have filed three motions seeking compensatory damages, costs, and attorney's fees. [DN 69; DN 77; DN 101]. Defendants have responded to each of Plaintiffs' motions. [DN 88; DN 105]. On January 18, 2019, the parties filed a Stipulation whereby they agree that:

> Under the terms of the July 31, 2009 [Amendment to Contract] the Plaintiffs collectively would be entitled to compensatory damage for the limestone mined and shipped or loaded for transport from the Property during the months of June 2016 through November 2018 in the amount of one million six hundred seventy-one thousand two hundred fifty-eight dollars and sixty-four cents ("$1,671,258.64) (the "Stipulated Compensatory Damages") with said sum to be allocated as follows:
>
> - WRF                              $835,629.32
> - Southern Aggregate    $835,629.32

[DN 96].

---

[1] For a more complete explanation of the facts giving rise to this action, [*see* DN 67; DN 84].

The Court held two telephonic conferences during which the parties discussed the issues of attorney's fees and interest rates. Following these conferences, the Court entered an order dismissing without prejudice Plaintiffs' First and Second Motions for Damages, Costs, Expenses, and Attorney's Fees. [DN 100]. The order instructed that "Plaintiffs shall file their third motion for damages, costs, expenses, and attorney's fees by February 19, 2019." [*Id.*]. Now before the Court are Plaintiffs' Third motion for Attorney's Fees, Expenses, and Costs [DN 101] and Plaintiffs' Brief Regarding Interest [DN 99]. Defendants have responded to both documents [DN 105] and Plaintiffs have filed their reply [DN 106].

Plaintiffs' claim for attorney's fees and costs is based in contract. The Amended Assignment Contract contains the following provision ("Paragraph 10"):

> In the event of a breach of any term hereof by a party hereto, then each other affected party shall have all rights and remedies hereunder, and at law or in equity including, without limitations, the right of specific performance and the recovery of damages, reasonable legal fees, reasonable appellate legal fees and costs incurred by the non-defaulting part[y] [sic] in pursuing any remedy available to it.

[DN 101 at 2; DN 105 at 3].

Plaintiffs claim they are entitled to $704,045.44[2] in attorney's fees, $2,300.00 in expenses, and $662.79 in costs. [DN 101-13]. Plaintiffs and their attorney ("Mr. Arnett") entered into a hybrid fee agreement whereby Plaintiffs agreed to pay Mr. Arnett a reduced fee of $200.00 per hour for legal services performed and agreed that: "Attorney is assigned a thirty percent (30%) contingency fee upon all recoveries, however denominated. . . whether obtained by settlement or by judgment or otherwise and whether denominated actual damages, costs, attorneys' fees, punitive damages or other recover, and in whatever form they may take." [DN 101-6]. Before

---

[2] "[A]ttorney fees in the amount of $203,793.64 plus an additional sum equal to 30% of the royalties ($500,251.80)." [DN 101-13].

entering into the hybrid fee agreement with Mr. Arnett, Plaintiffs were represented by Wyatt, Tarrant & Combs, LLP ("Wyatt"). [*See* DN 101-3]. Plaintiffs seek to recover from Defendants all fees arising from Wyatt's legal representation including fees incurred during the Prior Litigation. Plaintiffs also seek to recover $2,300.00 that was paid to Mark G. Enderle, CPA/CFF ("Enderle"), and $622.79 for unspecified costs. Finally, Plaintiffs argue that pre-judgment interest in this case should be assessed at the rate of 8% per annum. Defendants argue that the Plaintiffs are requesting unreasonable attorney's fees, that Plaintiffs are not entitled to attorney's fees and expenses that were incurred during the Prior Litigation, and that the $622.79 in unspecified costs are unrecoverable.

## DISCUSSION

### I. Attorney's Fees.

Pursuant to the Amended Assignment Contract, the parties agree that any breaching party shall pay the non-breaching party "damages, reasonable legal fees, reasonable appellate legal fees and costs incurred by the non-defaulting part[y] in pursuing any remedy available to it." [DN 101 at 2]. Plaintiffs argue that "[a]s the [Amended Assignment Contract] provides for recovery of reasonable attorney fees from the non-defaulting party, and the Defendants having been found to have defaulted, the Plaintiffs are entitled to an award of reasonable attorney fees and costs" for the Current and Prior Litigations. [DN 101-1 at 3]. Defendants do not dispute that a breaching party must pay reasonable attorney's fees, expenses, and costs under the Amended Assignment Contract. Defendants argue, however, that Plaintiffs are requesting an unreasonable amount of attorney's fees and that Plaintiffs are not entitled to legal fees from the Prior Litigation.

Plaintiffs' claims for legal fees, expenses, and costs arise from Paragraph 10 of the Amended Assignment Contract. Paragraph 10 provides:

**In the event of a breach** of any term hereof by a party hereto, then each other affected party shall have all rights and remedies hereunder, and at law or in equity including, without limitations, the right of specific performance and the recovery of damages, reasonable legal fees, reasonable appellate legal fees and costs incurred by the non-defaulting part[y] [sic] in pursuing any remedy available to it.

[DN 101 at 2] (emphasis added). Paragraph 10 is only triggered if a party breaches the contract.

Defendants argue that they did not breach the contract until they stopped making royalty payments after the Sixth Circuit Court of Appeals affirmed the dismissal of the Prior Litigation on July 6, 2016 and therefore are not obligated to pay legal fees, costs, or expenses to Plaintiffs arising from the Prior Litigation. Plaintiffs apparently do not disagree that Defendants first breached the contract when they ceased making royalty payments in July 2016 because they do not address Defendants' argument in their reply. In fact, Plaintiffs base their argument for legal fees on the "Defendants' decision to cease making royalty payments pursuant to the Assignment Contract almost immediately following the Sixth Circuit's" affirmance of this Court's dismissal of the Prior Litigation. [DN 101-1 at 4] (citation omitted). Because neither party argues that a breach occurred prior to July 2016, when Defendants ceased making royalty payments pursuant to the contract, the Court holds that Plaintiffs are not entitled to attorney's fees incurred during the Prior Litigation.

Defendants also argue that the amount of attorney's fees that Plaintiffs requests in unreasonable. The Court agrees. Plaintiffs request a total of $704,045.44 in attorney's fees. $193,103.04 of these fees arise out of Wyatt's representation of Plaintiffs. However, Plaintiffs do not apportion the fees sought between the Current and Prior Litigation. Plaintiffs are only entitled to an award of legal fees incurred after Defendants' breach. Therefore, the Court will only award fees for legal services performed after the Sixth Circuit's affirmance of this Court's dismissal of the Prior litigation on July 6, 2016.

An examination of the Wyatt invoice and accompanying documents reveals that nine individuals provided legal services during the relevant time period. [*See* DN 108 and exhibits thereto]. Four Wyatt Partners provided services to Plaintiffs. "GLS" performed 52.25 hours of work and charged a rate of $400 per hour. "JWR" performed 10.75 hours of work and charged a rate of $315 per hour. "KJG" performed .75 hours of work and charged a rate of $510 per hour. And "MTW" performed .50 hours of work and charged a rate of $375 per hour. Two Wyatt associates provided services to Plaintiffs. "CRS" performed 44.25 hours of work and charged a rate of $250 per hour. "AGB" performed .25 hours of work and charged a rate of $230 per hour. Finally, three Wyatt paralegals provided services to Plaintiffs. "SV" performed .25 hours of work and charged a rate of $240 per hour. "PS" performed 5.75 hours of work and charged a rate of $200 per hour. And "DW" performed .50 hours of work and charged a rate of $220 per hour. From the Court's experience in reviewing hourly rates of many lawyers in Louisville and other cities in Kentucky, the Court finds the hours performed and rates charged to be reasonable for each individual. Thus, Defendants must pay Plaintiffs $37,296.25 in legal fees for services Wyatt provided in the Current Litigation.

The remaining $510,942.40 of the fees Plaintiffs seek arise from Mr. Arnett's representation. Plaintiffs agreed to pay Mr. Arnett a reduced hourly rate of $200.00 plus a contingency fee of 30% of all recoveries. Defendants do not dispute that $200.00 is a reasonable hourly rate. [DN 105 at 8]. In fact, Defendants acknowledge that a rate of $235.00 per hour is reasonable. [*Id.*]. Instead, Defendants argue that the contingency fee agreement renders the requested fees unreasonable. Mr. Arnett performed 56.7 hours of work. [DN 105-1]. Therefore, Plaintiffs seek attorney's fees equivalent to $9,011.33 per hour.

Plaintiffs are requesting the Court to award them attorney's fees based on the hybrid fee agreement consisting of an hourly rate in addition to a contingency fee. Plaintiffs argue that "[w]hile the Sixth Circuit has not addressed such hybrid fee agreements directly, it should be noted that in other circuits," courts have upheld them. [DN 101-1 at 5]. Plaintiffs cite *Assyria v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 671 (Ariz. Ct. App. 2012), and *Glendale & 27th Investments LLC v. Delos Ins. Co.*, No. CV-10-00673-PHX-SRB, 2013 WL 11311227 (D. Ariz. May 6, 2013) to support their argument. In other words, Plaintiffs argue that Defendants must pay them attorney's fees equal to the amount due under the contract Plaintiffs entered into with their attorney because hybrid fee agreements are not unenforceable as a matter of law. The Court disagrees, and will not enforce an unreasonable contingency or hybrid fee contract onto Defendants who never agreed to be bound by it.

The Court is persuaded by the following four cases. First, in *City of Burlington v. Dague*, the Supreme Court addressed the issue of whether a court tasked with determining an award of reasonable attorney's fees under § 702(e) of the Solid Waste Disposal Act or § 505(d) of the Federal Water Pollution Control Act may enhance the fee award above the lodestar figure to reflect the fact that the prevailing party's attorneys were retained on a contingent fee basis and therefore assumed the risk of receiving no payment at all for their services. 505 U.S. 557, 559 (1992). The Court held that enhancement of the lodestar amount for contingency is impermissible under the fee-shifting statutes at issue. *Id.* at 567. In reaching its decision, the Court reasoned that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence" and that "[w]e hae established a 'strong presumption' that the lodestar represents the 'reasonable' fee." *Id.* at 562 (quoting *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 565 (1986)).

Although the Supreme Court's holding in *City of Burlington* is limited to statutory fee-shifting, the Sixth Circuit Court of Appeals extended the Court's reasoning to contractual fee shifting in *Advanced Accessory Systems, LLC v. Gibbs*, 71 Fed. Appx. 454 (6th Cir. 2003). In *Gibbs*, the Sixth Circuit upheld a district court's decision to award a lodestar amount instead of enforcing the contingency fee arrangement the plaintiff and his attorney had contracted for. The *Gibbs* court explained that "[t]hough *City of Burlington* dealt with the award of attorneys' fees specified in certain federal statutes, and is therefore not binding on the district court in this instance, it does offer strong persuasive authority for the reasonableness of the district court's calculation." *Id.* at 464. The *Gibbs* court applied Michigan law and determined that $200.00 per hour was a reasonable rate. *Id.*

Similarly, in *Quain v. Auragan, LLC*, the United States District Court for the Eastern District of Michigan declined to award fees to the prevailing party based on a contingency fee agreement. No. 09-13512, 2009 WL 4950552 (E.D. Mich. Dec. 16, 2009). The contract between the parties in *Quain* included a fee shifting provision and the prevailing party's attorney was retained on a contingency fee basis. The district court declined to award attorney's fees based on the contingency agreement to the prevailing party because "the matter was resolved by a default judgment; the issues were not particularly difficult as reflected by the amount of time expended by Plaintiff's counsel." *Id.* at *2. Furthermore, the district court reasoned:

> Here, the Court cannot ignore the fact that Plaintiff's counsel spent a mere 29.1 hours on this matter. His hourly rate is $350. Therefore, under the lodestar approach, reasonably [sic] attorneys' fees total $10,185, whereas the contingency fee arrangement yields an award of $128,635, an amount over twelve times the hourly rate. Should the Court award the amount requested by Plaintiff, his counsel would recover attorneys' fees at an hourly rate of $4420.45. Consequently, the Court declines to enter the amount requested.

*Id.* Ultimately, the *Quain* court awarded the prevailing party attorney's fees calculated at 1.5 times their normal rate "[b]ecause Plaintiff's counsel did undertake the risk of litigation and advance the costs of this litigation." *Id.*

Finally, in *Clayton v. Heartland Resources, Inc.*, a United States District Court for the Western District of Kentucky explained that the lodestar method for calculating attorney's fees "is to be followed even where the plaintiffs have entered into a contingency fee agreement with their attorney." No. 1:08-CV-94-M, 2010 WL 1416553 (W.D. Ky. March 31, 2010) (citing *Blanchard v. Bergeron*, 489 U.S. 87, at 94 (1989) ("We have never suggested that a different approach is to be followed in cases where the prevailing party and his (or her) attorney have executed a contingent-fee agreement.")). The *Clayton* court held that the prevailing party—who was relying solely on its contingency fee contract—had failed to provide adequate documentation to determine a reasonable fee and therefore denied the motion for attorney's fees with leave to refile. *Id.* at *3.

These cases stand for the proposition that a district court should not enforce unreasonable contingency or hybrid fee agreement onto a third party. Therefore, it is necessary to determine whether it is reasonable for Defendants to pay $510,942 in attorney's fees to Plaintiffs. Factors to consider in determining the reasonableness of attorney's fees include: (1) Amount and character of services rendered; (2) Labor, time, and trouble involved; (3) Nature and importance of the litigation or business in which the services were rendered; (4) Responsibility imposed; (5) The amount of money or the value of property affected by the controversy, or involved in the employment; (6) Skill and experience called for in the performance of the service; (7) The professional character and standing of the attorneys; and (8) The results secured. *Axton v. Vance*, 269 S.W. 534, 536-37 (Ky. 1925).

The parties do not disagree on the third, fourth, fifth, sixth, or seventh *Axton* factors. The parties agree that the litigation was highly important to Plaintiffs, that Mr. Arnett was responsible for zealously representing his client, the parties stipulated to the amount of damages, that this action involved skill and experience in contract litigation, and that Mr. Arnett is an established attorney in Western Kentucky who is well regarded by members of the bar. The importance of the litigation to Plaintiffs and the amount of damages in controversy suggest that the fee is reasonable. However, the skill and experience required in this case suggests that the fee is unreasonable. Although Plaintiffs state that Mr. Arnett "is an attorney with thirty-eight years of experience in contract litigation," they do not dispute Defendants' characterization that "[a]s a breach of contract case applying Kentucky law, no specialized skill or experience was required to represent Plaintiffs." [DN 101-1 at 6; DN 105 at 12]. The parties disagree regarding the remaining three factors.

First, Plaintiffs argue under the first factor that "The services provided by [Mr. Arnett] was the assumption of representing the Plaintiffs when they could no longer afford to pay counsel by an hourly arrangement in a breach of contract matter." [DN 101-1 at 6]. However, plaintiffs did not retain Mr. Arnett solely on a contingency fee basis but instead paid Arnett a $200 hourly rate. And Mr. Arnett testified that $200 is a reasonable rate. Therefore it is disingenuous to claim that Plaintiffs could no longer afford counsel for the matter. Furthermore, Defendants argue that this action is a commercial breach of contract case that required no specialized knowledge or expertise, that most of the research was performed by prior counsel, and that the case involved limited discovery. Considering the foregoing, the first *Axton* factor suggests the fee is unreasonable.

Second, Plaintiffs argue that "[t]here was extensive research performed by [Mr. Arnett] and staff regarding the issues of asserting time barred affirmative defenses and that of *res judicata*"

and that "the matter was prolonged as well by opposing counsel not negotiating in good faith." [DN 101-1 at 6]. Defendants argue that Wyatt performed substantially more work on this case than Mr. Arnett. Wyatt worked approximately twice as many hours on the current litigation than Mr. Arnett did, but would receive approximately $470,000 less than Mr. Arnett under the hybrid fee agreement. Defendants also assert that "Plaintiffs' Memorandum in Support of Motion for Summary Judgment was largely comprised of excerpts of prior rulings, pleadings, and arguments that were researched and briefed by the Wyatt firm." [DN 105 at 11]. Considering the foregoing, the second *Axton* factor strongly suggests the fee is unreasonable.

Third, Plaintiffs argue that Mr. Arnett was "able to secure a very favorable outcome for his clients by the successful advocacy of a summary judgment. By moving for [Summary Judgment] and not being mired in extensive discovery, as it was unwarranted (though longed for by Defendants' counsel), [Mr. Arnett] was able to save resources for both his clients and the Court." [DN 101-1 at 6-7]. Defendants argue that they did not want to be mired in extensive discovery and that they also filed a motion for summary judgment to prevent it. [DN 105 at 12-13]. Defendants also argue that "[a]lthough Plaintiffs' Motion for Summary Judgment was granted, in part, as noted above, it regurgitated a number of arguments researched and raised by prior counsel and quoted extensively from prior pleadings and rulings. In other words, current counsel did not have to 're-invent the wheel.'" [*Id.* at 13]. Considering the foregoing, the eighth *Axton* factor suggests that the fee is reasonable.

Considering all the factors, the Court finds $510,942.40 to be an unreasonable fee for Defendants to pay. The award sought by Plaintiff equates to a billable rate of about $9,000 per hour. This rate is forty-times higher than the $200 rate Mr. Arnett testified is within the range of reasonable rates that are charged in Western Kentucky by attorneys with similar experience. This

case is like *Quain* because the contingency arrangement has inflated the attorney fees to an extent that they are unjustified considering the limited hours worked. 2009 WL 4950552. Unlike the attorney in *Quain*, however, Mr. Arnett did not "undertake the risk of litigation and advance the costs of litigation" because he was paid a reasonable $200 fee for his services. *Id.* at *2. Thus, the Court holds that $510,942.40 is an unreasonable fee to require Defendants to pay pursuant to the fee-shifting contract.

It is important to acknowledge that the Court's holding is limited to the attorney's fee award Defendants are required to pay Plaintiffs pursuant to the Amended Assignment Contract. The Court does not offer an opinion on what fee the Plaintiffs are bound to pay their own attorney. "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990). Plaintiffs reached an agreement through arm's length negotiations with Mr. Arnett to provide legal services in exchange for $200 per hour and 30% of the total award received by Plaintiffs. Defendants were not a party to these negotiations, and it is unreasonable to enforce the agreement against them.

Although Defendants are not required to pay Plaintiffs pursuant to the hybrid fee agreement, they are required by Paragraph 10 of the Amended Assignment Contract to pay "reasonable legal fees." Therefore, the Court must determine what fee Defendants owe to Plaintiffs. When original jurisdiction is based on diversity of citizenship, a federal court must apply state law to determine an attorney's entitlement to fees. *See Hometown Folks, LLC v. S & B Wilson. Inc.*, 643 F.3d 520, 533 (6th Cir. 2011) (citation omitted). What constitutes a reasonable attorney fee when "the attorney and/or client seeks to recover a reasonable attorney fee from an opposing or third party" is an issue of law for the Court to decide. *Inn-Group Management Servs., Inc. v.*

*Greer*, 71 S.W.3d 125, 130 (Ky. Ct. App. 2002). Under Kentucky law, the "lodestar" method is the starting point for calculating reasonable attorney's fees. *See Meyers v. Chapman Printing Co.*, 840 S.W.2d. 826 (Ky. 1992); *W. Kentucky Royalty Tr. v. Armstrong Coal Reserves, Inc.*, No. 4:11-CV-00114-M, 2013 WL 2458724, at *2 (W.D. Ky. June 6, 2013).

"Under the lodestar method, a lodestar figure is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *W. Kentucky Royalty Tr.*, 2013 WL 2458724, at *2 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). After calculating the lodestar figure, the Court may adjust the fee based on several factors. *See Meyers*, 840 S.W.2d at 826. Under Kentucky law, Courts consider the following factors: "(1) amount and character of services rendered; (2) labor, time and trouble involved; (3) nature and importance of the litigation; (4) responsibility imposed; (5) the amount of money or value of the property affected by the controversy, or involved in the employment; (6) skill, experience, professional character, and standing of the attorneys; and (7) the results secured . *See GATX Corp. v. Appalachian Fuels, LLC*, No. 9-41-DLB, 2011 WL 3104070, at *5 (E.D. Ky. July 8, 2011) (citing *Boden v. Boden*, 268 S.W.2d 632, 633 (Ky. 1954)).

The lodestar figure for Mr. Arnett's legal services is $13,324.50. Mr. Arnett worked 56.7 hours on the current litigation. Mr. Arnett charged Plaintiffs a reduced rate of $200.00 per hour for his legal services in addition to a contingency fee. Plaintiffs have not informed the Court of Mr. Arnett's regular hourly rate. Defendants acknowledge that a rate of $235.00 per hour—the rate they have agreed to pay their counsel—is a reasonable rate. [DN 105 at 8, n. 16]. Plaintiffs do not dispute the reasonableness of this rate and, in fact, Mr. Arnett attests in his affidavit that a "two hundred dollar ($200.00) rate is reasonable and falls squarely within the range of market rates that are charged in Western Kentucky by attorneys with similar experience." [DN 101-7]; [*See also*

DN 101-9; DN 101-10]. Because Defendants acknowledge that $235.00 is a reasonable rate and because the rate is greater than the $200.00 that Mr. Arnett testified was reasonable and within the range of similarly situated attorneys, the Court finds that $235.00 is a reasonable rate for Mr. Arnett's services in this case. Multiplying this reasonable rate by the 56.7 hours—which Defendants do not argue is an unreasonable amount of hours—produces a lodestar figure of $13,324.50.

Based on the *Boden* factors, it is inappropriate to make a departure from the lodestar figure in this case. The *Boden* factors are equivalent to the *Axton* factors discussed above and the analysis in this case is the same. Although this case involved a substantial amount of money, Mr. Arnett provided a relatively small amount of services in the litigation. Further, this action did not require special skill or experience. Minimal labor, time, and trouble was involved in litigating this action. Mr. Arnett only worked 56.7 hours on the action. Finally, the responsibility imposed and professional character and standing of the attorneys involved in this litigation do not suggest that a departure from the lodestar figure is appropriate.

For the foregoing reasons, Defendants shall pay Plaintiffs $13,324.50 for services performed by Mr. Arnett.

## II. Expenses.

Plaintiffs are not entitled to recover $2,300.00 paid to Mark Enderle, a Certified Public Accountant, for an investigation into the underpayment of royalties. Plaintiffs argue they "retained an expert for analysis of certain documents submitted by the Defendants during discover in the amount of $2,300.00." [DN 101-1 at 7]. Defendants argue that Plaintiffs employed Mr. Enderle to investigate their claim for underpayment of royalties prior to the July 2016 Sixth Circuit decision.

[DN 105 at 22]. Defendants direct the Court to Mr. Enderle's work product affidavit and accompanying documents, which evince that Mr. Enderle only investigated tax returns for the years of 2012 through 2016, which reflect reported limestone for the years 2011 through 2015. Because this Court has not found that Defendants breached the Amended Assignment Contract before July 2016 and because the fee-shifting provision of the contract is not triggered absent a breach, Plaintiffs are not entitled to payment for these services. Furthermore, Plaintiffs do not dispute Defendants' arguments in their motion or reply.

### III.    Costs.

Plaintiffs are not entitled to recover their $662.79 in costs. Plaintiffs argue that "[i]n addition to the Attorneys' Fees set forth herein, the Plaintiffs are due costs for filing this action and copies in the amount of $662.79." [DN 101-1 at 7]. However, Plaintiff has failed to supply documentary support explaining how the costs were incurred. The sentence quoted above is the only mention of the costs in the memorandum supporting Plaintiffs' motion. Plaintiffs have not directed the Court to an affidavit or other supporting documentation to demonstrate that they are entitled to these costs.

### IV.    Prejudgment and Post-Judgment Interest.

A.  Prejudgment Interest.

Plaintiffs are entitled to prejudgment interest at the rate of 8% per annum. In diversity cases, state law governs awards of prejudgment interest. *Jack Henry & Associates, Inc. v. BSC, Inc.*, 487 F. App'x 246, 260 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Estate of Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005)). Under Kentucky law, "prejudgment interest is awarded as a matter of right on a liquidated demand, and is a matter within

the discretion of the trial court or jury on unliquidated demands." *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (citing *Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136, 141 (Ky. 1991)). Furthermore:

> A damages claim is liquidated if it is "of such a nature that the amount is capable of ascertainment by mere computation, can be established with reasonable certainty, can be ascertained in accordance with fixed rules of evidence and known standards of value, or can be determined by reference to well-established market values." [*3D Enterprises Contracting Corp.*, 174 S.W.3d at 450] (citation omitted). Examples include a "bill or note past due, an amount on an open account, or an unpaid fixed contract price." [*Nucor Corp.*, 812 S.W.2d at 141]. In contrast, an unliquidated damages claim is one which has "not been determined or calculated, . . . not yet reduced to a certainty in respect to amount." *Id.* (citations omitted). An unliquidated claim is unspecified and undetermined prior to a breach. In determining whether a claim is liquidated or unliquidated, "one must look at the nature of the underlying *claim*, not the final award." *3D Enterprises*, 174 S.W.3d at 450.

*Ford Constructing, Inc. v. Ky. Transp. Cabinet*, 429 S.W.3d 397, 414 (Ky. App. 2014). "[I]f damages are both undisputed and liquidated, prejudgment interest is payable as a matter of law." *Barrett v. Hamilton Mut. Ins. Co. of Cincinnati, Ohio*, No. 2009-CA-002234-MR, 2011 WL 43307, at *3-4 (Ky. Ct. App. Jan. 7, 2011) (citing *3D Enterprises Contracting Corp.*, 174 S.W.3d 440; *Nucor Corp.*, 812 S.W.2d 136).

Because the damages in this case are liquidated, Plaintiffs are entitled to prejudgment interest as a matter of law. *See Barrett*, 2011 WL 43307 at *3-4. "A damages claim is liquidated if it is 'of such a nature that the amount is capable of ascertainment by mere computation . . . .'" *Ford Contracting, Inc.*, 429 S.W.3d 397 (citing *3D Enters. Contracting Corp.*, 174 S.W.3d at 450)). The damages in this case arise from Defendants' failure to make royalty payments pursuant to the Amended Assignment Contract. The contract enunciates the terms by which each royalty payment is calculated. Therefore, the damages in this case are "of such a nature that the amount is capable of ascertainment by mere computation..." and are liquidated. *3D Enters. Contracting*

*Corp.*, 174 S.W.3d at 450; *See also EQT Prod. Co. v. Magnum Hunter Prod. Co.*, 266 F. Supp. 3d 961, 979 (E.D. Ky. 2017) (explaining that "EQT's claim for unpaid royalties from 2015 to present are liquidated because they are capable of ascertainment by mere computation, based on the percentages set forth in the FOA royalty provisions and the gross proceeds from the sale of oil and/or gas produced from FOA wells."). In fact, the parties have already computed and stipulated to the compensatory damages in this case. [DN 96].

Under Kentucky law, pre-judgment interest accrues at the legal rate of eight percent (8%) per annum. KRS § 360.010(1). In this case, Judgment was entered on May 22, 2018. [DN 67]. Thus, Defendants must pay prejudgment interest at a rate of eight percent on each missed royalty payment assessed from the date payment became due until May 22, 2018.

Defendants argue that pre-judgment interest should be assessed at a rate of six percent (6%). The Court disagrees. More specifically, Defendants argue that KRS § 360.040(1) prescribes the six percent rate for prejudgment interest. In relevant part, KRS § 360.040(1) says: "a judgment, *including a judgment for prejudgment interest*, shall bear six percent (6%) interest compounded annually from the date the judgment is entered." (emphasis added). KRS § 360.040 prescribes the post-judgment interest rate that must be assessed under Kentucky law. The statute does not influence the rate at which prejudgment interest accrues. Instead it sets the rate the judgment for prejudgment interest shall accrue interest after the judgment is entered. Because federal law controls post-judgment interest in diversity cases, KRS § 360.040 is not controlling law.

B. Post-Judgment Interest.

Three categories of money award will be subject to post-judgment interest in this case: (1) compensatory damages, (2) prejudgment interest on the compensatory damages, and (3) legal fees.

"The default rule is that 'in diversity cases in this Circuit, federal law [i.e., § 1961] controls postjudgment interest' even while state law governs awards of prejudgment interest." *Jack Henry & Associates, Inc. v. BSC, Inc.*, 487 F.App'x 246, 260 (6th Cir. 2012) (quoting *Estate of Riddell v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (internal quotation marks omitted)). Federal law provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1 year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding." 28 U.S.C. § 1961(a). Post-judgment interest "shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b).

"The purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (quotation omitted). The Supreme Court has therefore held that "postjudgment interest properly runs from the date of entry of judgment." *Id.* at 835. The general rule for determining which "judgment" triggers the accrual of post-judgment interest is that "postjudgment interest should begin to run once damages have been 'ascertained' in [a] meaningful way." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 588 (6th Cir. 2002) (quoting *Kaiser*, 494 U.S. at 835-36).

The Court will address each category of damages individually. First, post-judgment interest began to accrue on the compensatory damages when the Court granted Plaintiffs partial summary judgment on their breach of contract claims. [DN 67]. This judgment was entered on May 22, 2018. The Sixth Circuit Court of Appeals has "applied *Kaiser* to hold that post-judgment interest runs from the date of any judgment that is not entirely set aside." *Shalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 429 (6th Cir. 1999). In *Shalka*, the Court of Appeals held

that post-judgment interest begins to accrue from the date of the initial judgment entitling the prevailing party to damages, even if that judgment is not an appealable final order and even if it is a partial judgment. 178 F.3d at 429. Because the compensatory damages in the case before this Court are liquidated, they were "'ascertained' in a meaningful way" when this Court granted summary judgment on the breach of contract claims for failure to make royalty payments. *Kaiser*, 494 U.S. at 835-36. The compensatory damages in this case are capable of ascertainment through mere computation. And in fact, the parties have computed and stipulated to the damages in this case. Therefore, post-judgment interest began to accrue on the compensatory damages on May 22, 2018.

Second, post-judgment interest on the judgment awarding prejudgment interest will begin to accrue on the date this judgment is entered. In this case, the prejudgment interest award has not been "sufficiently ascertained" until now. *See Coal Res. Inc. v. Gulf & W. Indus. Inc.*, 954 F.2d 1263, 1275 (6th Cir. 1992); *Associated General Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 491 (6th Cir. 2001). Although the compensatory damages in the case before this Court are liquidated, the rate at which prejudgment interest would accrue was uncertain until now and required additional briefing by the parties. Therefore, post-judgment interest shall begin to accrue on all prejudgment interest pursuant to 28 U.S.C. § 1961 upon entry of this Memorandum Opinion and Order.

Finally, post-judgment interest on legal fees will begin to accrue on the date this judgment is entered. In *Drabik*, the Sixth Circuit Court of Appeals addressed the question of "[w]hether an award of attorney fees accrues interest, pursuant to 28 U.S.C. § 1961, from the date of the judgment that unconditionally entitled the prevailing party to reasonable attorney fees or the date of the judgment quantifying that fee award." 250 F.3d 482, 485 (6th Cir. 2001). The Court of Appeals

held that interest on attorney's fees begins to accrue on the date of the award unconditionally entitling the prevailing party to fees, even if the fees have not been reduced to a sum certain. *Id.* at 484. In the case before this Court, the date of the award entitling Plaintiffs to fees and the date the fees are quantified into a precise sum are the same; It is the date upon which this judgment is entered. As part of Plaintiffs' Motion for Attorneys Fees, Expenses, and Costs, Plaintiffs argued that they were entitled to fees. Defendants objected to the award of these fees in their response. Ultimately, this Court decided that Plaintiffs are entitled to an award of fees. But prior to the entry of this judgment, it was uncertain whether Plaintiffs were entitled to an award of fees. Therefore, the entry of this Memorandum Opinion and Order marks the date upon which post-judgment interest shall accrue on the award of legal fees.

Thus, post-judgment interest—assessed at the rate prescribed by 28 U.S.C. § 1961—began to accrue upon the award for compensatory damages on May 22, 2018 and shall begin to accrue on all other damage awards upon the entry of this Memorandum Opinion and Order.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED,** Defendants must pay Plaintiffs the following:

**(1)** Compensatory damages as stipulated to by the parties [DN 96]. More specifically:

> Under the terms of the July 31, 2009 [Amendment to Contract] the Plaintiffs collectively would be entitled to compensatory damage for the limestone mined and shipped or loaded for transport from the Property during the months of June 2016 through November 2018 in the amount of one million six hundred seventy-one thousand two hundred fifty-eight dollars and sixty-four cents ("$1,671,258.64) (the "Stipulated Compensatory Damages") with said sum to be allocated as follows:

- WRF                    $835,629.32
- Southern Aggregate     $835,629.32

(2) $37,296.25 in legal fees for services Wyatt provided in the Current Litigation;

(3) $13,324.50 in legal fees for services Mr. Arnett provided in the Current Litigation;

(4) Prejudgment interest at the rate of eight percent (8%) per annum on each missed royalty payment, assessed from the date each payment became due until May 22, 2018;

(5) Post-judgment interest as prescribed by 28 U.S.C. § 1961 on compensatory damages as stipulated to by the parties [DN 96] accruing from May 22, 2018 until the judgment is paid by Defendants;

(6) Post-judgment interest as prescribed by 28 U.S.C. § 1961 on the award of prejudgment interest, accruing from the date this Memorandum Opinion and Order is entered until the judgment is paid by Defendants;

(7) Post-judgment interest as prescribed by 28 U.S.C. § 1961 on the award of legal fees accruing from the date of this Memorandum Opinion and Order is entered until the judgment is paid by Defendants.

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 11, 2019

cc: Counsel of Record.